UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TAMELA G. COLE,

          Plaintiff,                   CIVIL ACTION NO. 07-14364

          v.                       DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF                 MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion be denied, plaintiff's motion be granted in part, and the matter be remanded to the agency for further proceedings regarding the limitations resulting from plaintiff's condition.

### II. Background

      On May 5, 2005, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) due to fibromyalgia, bone spurs, bulging discs, and neck/back arthritis, with a disability onset date of August 1, 2004. (Tr. 62-63) Plaintiff completed high school and has work history including medical device assembly/inspection, data entry, and secretarial work. (Tr. 68, 248-51)

The Social Security Administration (SSA) denied plaintiff's claims on initial review. (Tr. 45-47) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 39) The hearing was held on July 5, 2007 before ALJ Thomas Walters. (Tr. 243-75) Plaintiff, represented by counsel, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert (VE).

On August 8, 2007, the ALJ issued a decision denying plaintiff's claim. (Tr. 10-22) The ALJ determined that the plaintiff has the severe impairments of fibromyalgia, spondylotic changes of the spine, and depressive disorder, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Subpart P, Appendix 1 of the Social Security Regulations. (Tr. 15-17) In addition, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform a range of unskilled sedentary work.[1] (Tr. 17-20) The ALJ found that given the plaintiff's RFC, age, educational background, and work experience a significant number of jobs existed in the national economy that she could perform. (Tr. 21) Accordingly, the ALJ determined that the plaintiff was not "disabled" within the meaning of the Social Security Act at any time between August 1, 2004 and March 31, 2007. (Tr. 21) The plaintiff was 30 years-old at the time of the ALJ's decision. (Tr. 20)

Following the ALJ's denial of her claim, plaintiff filed a request for review of the decision with the SSA's Appeals Council. (Tr. 8-9) The Appeals Council denied the request on

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

September 17, 2007.  (Tr. 4-6)  The ALJ's decision thus became the final decision of the Commissioner.

On October 15, 2007 plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the parties have filed cross motions for summary judgment.  Plaintiff claims that the ALJ erred in assessing plaintiff's fibromyalgia, pain, limitations and credibility, and in posing incomplete and inaccurate hypothetical questions to the VE.  The Commissioner contends that the disability determination is supported by substantial evidence and should therefore be affirmed.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Further,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proving that she is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five step process is used to evaluate Social Security Disability claims.  See 20 C.F.R. §

404.1520.  As discussed in Foster, this process consists of the following:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment."  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity,
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

279 F.3d at 354 (citations omitted).

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's

findings are supported by substantial evidence and whether the ALJ applied the proper legal

standards.  Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997); Brainard v. Secretary of HHS,

889 F.2d 679 (6th Cir. 1989).  "Substantial evidence is more than a mere scintilla of evidence

but less than a preponderance and is such evidence as a reasonable mind might accept as

adequate to support a conclusion." Brainard, 889 F.2d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

In this case, the ALJ went through the five step analysis and determined 1) plaintiff was not engaged in gainful employment (Tr. 15); 2) plaintiff was "severely" impaired (Tr. 15); 3) plaintiff did not have an impairment listed in, or medically equal to one listed in Subpart P, Appendix 1 of the Social Security Regulations (Tr. 17); and 4) plaintiff was incapable of performing any of her past work (Tr. 20). However on the fifth and last step of the analysis, the ALJ found that plaintiff was not disabled because "the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. 21)

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity. Specifically, the ALJ asked the VE to,

> [A]ssume a person of the same age, education, location, experience
> as the Claimant. Who would have [an RFC] for a range of
> sedentary unskilled work? That would not involve repetitive
> bending twisting or turning. It would involve only occasional
> climbing, crawling, swatting (sic) or kneeling. No prolonged
> walking. No working around moving machinery or unprotected
> heights. Based upon those restrictions could such person perform
> any of the past work? . . . Would there be other sedentary unskilled
> jobs that meet this (sic) criteria?

(Tr. 270)  In response to the hypothetical, the VE testified that such a person could do clerical work, could be a surveillance monitor, or could be a table worker, and that approximately 14,050 of these jobs existed.[2]  (Tr. 270-71)  Based on that testimony, the ALJ determined that plaintiff was not disabled.  (Tr. 21)

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987); 20 C.F.R. § 404.1560(c).  Conversely, where the hypothetical does not accurately reflect the claimant's limitations, the VE's testimony cannot support such a finding.  The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical.  Webb v Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004).  Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints; the hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence."  Delgado v. Commissioner of Social Security, 30 Fed. Appx. 542, 548 (6th Cir. 2002).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to mention any of plaintiff's limitations from pain, fatigue, side effects of medications, aggravations of pain by movement, depression, and crying spells.  Specifically, plaintiff argues

---

[2] The VE did not state whether these jobs existed in the local, state, regional, or national economy.  However, 42 U.S.C. § 423(d)(2)(A) only requires substantial work to exist in the national economy.

that the hypothetical was inaccurate because the ALJ did not give proper weight to the opinions

of plaintiff's treating physician and erred in assessing plaintiff's credibility.

### A. Consideration of Treating Physician's Opinions

By arguing that ALJ Walters failed to give appropriate weight to the opinion of David

Vallance, M.D., plaintiff invokes the "treating physician" rule.  The Federal Regulations define

the "treating physician" rule as follows:

> If we find that a treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic techniques
> and is not inconsistent with the other substantial evidence in your
> case record, we will give it controlling weight. When we do not
> give the treating source's opinion controlling weight, we apply the
> factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section,
> as well as the factors in paragraphs (d)(3) through (d)(6) of this
> section in determining the weight to give the opinion. We will
> always give good reasons in our notice of determination or
> decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).  As the Sixth Circuit stated in Walters v. Commisioner of Social

Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[I]n general, the opinions of treating physicians are

accorded greater weight than those of physicians who examine claimants only once."  As

suggested by 20 C.F.R. § 404.1527(d)(2), the ALJ is not bound by the treating physician's

opinion if that opinion is not "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence . . . ."  See also

Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004) ("Treating

physicians' opinions are only given [substantial, if not controlling] deference when supported by

objective medical evidence").  Specifically, "the ALJ, in determining how much weight is

appropriate, must consider a host of factors, including the length, frequency, nature, and extent

of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." <u>Rogers v. Comm'r of Soc. Sec.</u>, 486 F.3d 234, 242 (6th Cir. 2007) (referring to the factors listed in paragraphs (d)(2)(i), (d)(2)(ii), and (d)(3)-(d)(6) of 20 C.F.R. § 404.1527); <u>see also Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 544 (6th Cir. 2004)).

Additionally there is a procedural requirement for implementing the treating physician rule, "the ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" <u>Rogers</u>, 486 F.3d at 242 (quoting Soc. Sec. R. 96-2p, 1996 WL 374188). This procedural requirement ensures two things. First, it ensures that the claimant understands why, even though her physician deemed her disabled, the ALJ ruled that she is not. <u>Wilson</u>, 378 F.3d at 544. Second, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." <u>Id.</u> "[A] failure to follow the procedural requirement . . . denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified on the record." <u>Rogers</u>, 486 F.3d at 243; <u>see also</u> <u>Wilson</u>, 378 F.3d at 546.

In this case plaintiff's physician Dr. Vallance, a rheumatologist, submitted two letters on December 6, 2006, and July 3, 2007, respectively, to ALJ Walters containing Dr. Vallance's report on plaintiff's condition. (Tr. 229, 231) According to Dr. Vallance,

> Ms. Cole suffers from intractable spondylosis with cervical and lumbar radiculopathies, and fibromyalgia syndrome. She also has reactive depression. Her symptoms include diffuse pain; severe fatigue; post-exertional malaise; and cognitive impairments

(difficulty concentrating, trouble with word finding, and short-term memory impairment). . . . The spondylosis diagnosis is based on an April, 2005, spinal MRI and compatible symptoms and physical findings. The diagnosis of [fibromyalgia syndrome] and depression are based on her history and physical exam. She fulfills all 1990 ACR criteria for Fibromyalgia Syndrome.

(Tr. 229) It was Dr. Vallance's opinion that plaintiff was "completely disabled from any occupation" due to: "1. Severe pain requiring narcotic analgesics, 2. Severe fatigue, 3. Joint impairment, 4. Depression, 5. Attention and concentration impairment, 6. Unavoidable medication side effects, 7. Risk of disease exacerbation from usual work environments." (Tr. 229)

The ALJ agreed with Dr. Vallance that plaintiff had fibromyalgia, spondylotic changes of the spine, and depressive disorder; the ALJ also determined that this combination of impairments was "severe." (Tr. 15) However, the ALJ disagreed with Dr. Vallance's opinion that plaintiff was disabled. (Tr. 20) In analyzing Dr. Vallance's opinion the ALJ invoked the treating physician rule, but said that his "opinion is conclusionary and not well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not entitled to controlling weight under 20 C.F.R. 404.1527(d)(2) and Social Security Ruling 96-2p." (Tr. 20) The ALJ specifically pointed to two areas of Dr. Vallance's analysis to show how they were inconsistent with the medical record: the plaintiff's radiculopathy and cognitive impairments. The ALJ found there was no objective basis for Dr. Vallance's assertion that plaintiff suffered from spondylitis with cervical and lumbar radiculopathies.[3] (Tr. 20) The ALJ noted that EMG tests administered by Dr. Lawrence Handelsman failed to find any evidence of cervical or lumbar

_____

[3] Spondylitis is "[i]nflammation of one or more of the vertebrae." Stedman's Medical Dictionary 1656 (26th ed. 1995). Radiculopathy is a "[d]isorder of the spinal nerve roots." Stedman's Medical Dictionary 1484 (26th ed. 1995).

radiculopathies. (Tr. 16, 190) On the issue of cervical and lumbar radiculopathies, the ALJ is correct that there is no evidence of such on the record and that Dr. Vallance did not point to any evidence that would contradict the findings of Dr. Handelsman. Thus, the ALJ's opinion is supported by substantial evidence in this regard.

However, the ALJ did not mention Dr. Vallance's opinions regarding plaintiff's pain. In a previous Eastern District of Michigan case, the court addressed a similar disagreement as to whether or not plaintiff's chronic pain was caused by lumbar radiculopathy. Sigler v. Secretary of Health and Human Services, 892 F. Supp. 183, 187 (E.D. Mich.1995) (Zatkoff, J.). In that case, the court stated, "Regardless of the source of the pain, mechanical back problems or radiculopathy, the medical experts are in agreement that the Plaintiff's pain is chronic. Therefore, the court finds that the treating physician's testimony is supported by the clinical diagnostic tests performed, and that the ALJ erred in failing to give substantial deference to the treating physician's opinion." Id. Likewise in this case, regardless of whether or not plaintiff suffered from cervical and lumbar radiculopathies, it is undisputed that plaintiff suffered from chronic pain; the SSA's evaluator, Dr. Bharti Sachdev, also opined that plaintiff "has chronic fibromyalgia/myofascial pain." (Tr. 213) The ALJ erred by focusing on the inconsistency of the radiculopathy diagnosis and not considering Dr. Vallance's opinions as to plaintiff's pain, which was the underlying basis for his opinion that plaintiff was totally disabled.

The ALJ also disagreed with Dr. Vallance's opinion that plaintiff suffered from "cognitive impairments (difficulty concentrating, trouble with word finding, and short-term memory impairment)." (Tr. 20) According to the ALJ, "The record does not reflect serious

dysfunction in this regard, and shows the contrary to be true." (Tr. 20) The ALJ relies on a

psychiatric/psychological exam by Joseph Morris, Ph.D., in October 2005 that found,

> The claimant was oriented to time, person and place, and she was
> in contact with reality. The claimant's stream of mental activity
> was logical and organized, and she provided appropriate answers
> to questioning. The claimant (sic) memories were intact, and she
> completed simple calculations accurately. The claimant's
> condition was characterized as a depressive disorder. A global
> assessment of functioning score of 61 was ascribed to his (sic)
> overall condition. Such a rating, as defined in DSM-IV, denotes a
> mild symptomatology.

(Tr. 16-17) The ALJ also notes that, "Dr. Vallance apparently did not conduct formal

intellectual or mental status evaluations on the claimant." (Tr. 20)

On this issue the ALJ misstates the record when he contradicts Dr. Vallance's opinion.

The psychiatric/psychological exam by Joseph Morris, Ph.D., on which the ALJ appears to rely,

was administered in October 2005. (Tr. 205-10) This was two months before Dr. Vallance

began treating plaintiff and prescribing her medications. (Tr. 229) Although Dr. Vallance's

letters do not mention his opinion as to the cause of plaintiff's cognitive impairments, plaintiff

testified that it is her drug regimen that causes her memory problems. (Tr. 259) Furthermore,

Dr. Morris' evaluation does have evidence that plaintiff had difficulty with short-term memory

even at this earlier time. After three minutes, plaintiff was only able to recall two out of three

ordinary objects she was asked to remember. (Tr. 208) Additionally, the ALJ's reliance on the

fact that Dr. Vallance did not conduct formal intellectual or mental status evaluations on plaintiff

is misplaced; Dr. Vallance could easily observe plaintiff's mental status during the time plaintiff

was in his care.

The ALJ failed to deal with any other portion of the "treating physician" rule. Specifically, the ALJ must also consider "the length, frequency, nature, and extent of the treatment relationship" between plaintiff and Dr. Vallance. Rogers, 486 F.3d at 242. As of the date of the first letter (December 6, 2006), plaintiff had been seeing Dr. Vallance for about one year, and at the time of the second letter (July 3, 2007) she had been his patient for approximately eighteen months. According to plaintiff's testimony she saw Dr. Vallance at least every other month during this time. (Tr. 264) Plaintiff also testified that Dr. Vallance prescribes all of her medications, (Tr. 263) and that, even though she still has a family physician, plaintiff does not see her for anything. (Tr. 264) Furthermore, the medical opinions the ALJ relies upon in lieu of Dr. Vallance's are those of Dr. Sachdev and Dr. Morris, (Tr. 16) both of whom evaluated plaintiff at the SSA's request and they only met with plaintiff one time. (Tr. 205-10, 211-13)

The ALJ must also consider "the specialization of the physician . . . ." Rogers, 486 F.3d at 242. The ALJ did not take into account the fact that Dr. Vallance is a rheumatologist and, as such, is a specialist in fibromyalgia. Furthermore, Dr. Vallance's general diagnosis of fibromyalgia and depression is confirmed by the SSA's evaluator Dr. Sachdev. (Tr. 213)

Because the ALJ focused on the inconsistency of Dr. Vallance's radiculopathy diagnosis, but did not deal with the underlying opinion as to the level of plaintiff's pain and her subsequent disability, and because he misstated the record regarding plaintiff's mental status, there is not substantial evidence to support the ALJ's disability determination.

Furthermore by failing to consider Dr. Vallance's specialty and the length, frequency, nature, and extent of his relationship with the plaintiff the ALJ did not satisfy the procedural

requirement of the "treating physician" rule.  Rogers, 486 F.3d at 243; Wilson, 378 F.3d at 544.

The ALJ's failure to satisfy the procedural requirement impedes a meaningful review by this

court.  See e.g. Hurst v. Secretary of Health and Human Services, 753 F.2d 517, 519 (6th Cir.

1985) (articulating reasons for a disability decision is essential to meaningful appellate review);

Social Security Ruling (SSR) 96-7p at *2 ("The determination . . . must be sufficiently specific

to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

to the individual's statements and the reasons for that weight.")

### B. Plaintiff's Credibility

The ALJ determined that plaintiff's allegations regarding her limitations were not

credible.  An ALJ's findings regarding the credibility of the applicant "are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

demeanor and credibility."  Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th

Cir. 1997).  However, credibility assessments are not insulated from judicial review; such a

determination must be supported by substantial evidence.  Id.  Further, in order for there to be

meaningful appellate review, the ALJ must articulate his reasons for rejecting certain lines of

evidence.  Hurst v. Sec'y of Health & Human Servs., 753 F.2d 517, 519 (6th Cir. 1985).

When disability claims, like this one, are based on fibromyalgia, "where subjective pain

complaints play an important role in the diagnosis and treatment of the condition, providing

justification for discounting a claimant's statements is particularly important."  Rogers v.

Comm'r of Soc. Sec., 486 F.3d 234, 248 (6th Cir. 2007) (citing Hurst, 753 F.2d at 519 (6th Cir.

1985)).  In general,

> Whenever a claimant's complaints regarding symptoms, or their
> intensity and persistence, are not supported by objective medical

> evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.

Id. at 247. The ALJ must have specific reasons for not finding the plaintiff credible, and he must make his reasoning clear and specific. Id. at 249.

In this case, plaintiff testified that she was in constant pain that forced her to stop working (Tr. 252), and that her symptoms made it impossible to sit down for long enough to work (Tr. 266). She further testified that she could not finish household chores she started (Tr. 259); that her medication made her drowsy (Tr. 260); and that due to her pain and medications she had to lay down four times a day for forty-five to sixty minutes (Tr. 260). Based on the record and plaintiff's testimony, the ALJ found, "the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 19) The ALJ discounted plaintiff's credibility because,

> [N]o physician imposed a work preclusive limitation on the claimant's functioning. . . . [R]esults of MRI, EMG, radiographic, serology and clinical evaluations . . . do not uncover totally debilitating pathology. . . . Clinicians observed the claimant ambulate normally without an assistive device and to retain functional range of motion. The claimant's neurological status in terms of motor power, reflex activity, sensation, coordination and cranial nerve functions were intact . . . . [T]he record does not substantiate the claimant's expressed level of symptomatology and loss of function, including her reported need to lie down 4 times daily for 45-60 minute intervals due to sleepiness and pain relief. Nor does the evidence confirm that the claimant's pharmacology regimen engenders functionally limiting side effects.

(Tr. 19)

The ALJ erred by discounting plaintiff's expressed level of pain and loss of function based on a lack of objective medical evidence. As found by the Sixth Circuit, "it would be 'nonsensical to discount a fibromyalgia claimant's subjective complaints of pain based upon lack of objective medical evidence, as such evidence is generally lacking with fibromyalgia patients.'" Rogers, 486 F.3d at 248 (quoting Canfield v. Comm'r of Soc. Sec., No. CIV.A.01-CV-73472-DT, 2002 WL 31235758, at *1 (E.D. Mich. Sept. 13, 2002)). Neither the existence nor scope of fibromyalgia can be determined by objective tests. As the Sixth Circuit said in Rogers,

> [W]e have recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. See Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 820 (6th Cir.1988) (per curiam) (noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia); see also Swain v. Comm'r of Soc. Sec., 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) (observing that "[f]ibromyalgia is an 'elusive' and 'mysterious' disease" which causes "severe musculoskeletal pain").

486 F.3d at 243-44 (footnotes omitted). Furthermore, clinical observations of fibromyalgia are not reliable because patients "manifest normal muscle strength and neurological reactions and have a full range of motion." Preston, 854 F.2d at 820 (quoted with approval in Rogers, 486 F.3d at 244). In this case, the ALJ relied on evidence from objective tests when he found plaintiff's complaints concerning the intensity, persistence, and limiting effects of her symptoms not to be credible. (Tr. 19) The ALJ noted the results of MRI, EMG, radiographic, serology and clinical evaluations. (Tr. 19) Additionally the ALJ noted that clinicians observed plaintiff ambulate normally, and that plaintiff retained a full range of motion. (Tr. 19) The ALJ did not distinguish

fibromyalgia consideration from those in other cases where objective tests results will predict the level of plaintiff's pain.

The ALJ also erred by noting activities in his decision that plaintiff engages in which are not comparable to work activities and by mischaracterizing her stated level of activity. The ALJ mentioned that plaintiff prepares meals, drives a car, shops, and does household chores as evidence that plaintiff's statements regarding level of pain and functional limitations are not credible. (Tr. 19) However, in <u>Rogers</u> the Sixth Circuit found plaintiff's "ab[ility] to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news" were "somewhat minimal daily functions" and they "are not comparable to typical work activities."[4] <u>Rogers</u>, 486 F.3d at 248. Furthermore, the ALJ mischaracterized plaintiff's testimony regarding her activity levels. <u>See</u> <u>id.</u> at 248-49. For instance, while the ALJ found that plaintiff "washes dishes and laundry" (Tr. 19), plaintiff actually testified that she uses a dishwasher and even so is unable to load or unload the dishes all at one time (Tr. 259). The ALJ also found that, "[a]t a measured pace, the claimant assists in household chores" (Tr. 19), but this appears to ignore plaintiff's multiple statements that she must abandon household chores that she begins (Tr. 86, 206, 259). "When I start something I hardly ever am the one to finish it. My husband has to work all day and come home and do a lot of chores." (Tr. 86) The ALJ also found that, "claimant drives a car, goes shopping, and spends time with friends." (Tr. 19) However, plaintiff testified she only shops for necessities (Tr. 84), needs assistance to push the cart and lift heavy items like water (Tr. 85, 262), requires rest during shopping trips, or abandons them, due to leg pain (Tr. 85, 206, 262). Plaintiff only visits with her mother, mother-in-law,

---

[4] Typical or basic work activities refer to "the abilities and aptitudes necessary to do most jobs," including among other things "walking, standing, sitting, lifting, pushing, pulling, reaching carrying, or handling." 20 C.F.R. § 416.921(b).

and sister, and grocery shops with her cousin, other than that she testified that she sees few people. (Tr. 85, 267) The ALJ's reliance on the plaintiff's activities is misplaced, both because these are minimal daily activities that are not comparable to typical work activities and because the ALJ has mischaracterized plaintiff's expressed level of function in his decision. See Rogers, 486 F.3d at 248-49.

The ALJ further erred by failing to take into account the side effects of plaintiff's medications. In Rogers, the Sixth Circuit remanded in part because, "[b]y focusing on purely objective evidence, the ALJ failed to discuss or consider the lengthy and frequent course of medical treatment or the nature and extent of that treatment, the numerous medications [plaintiff] has been prescribed, the reasons for which they were prescribed, or the side effects." 486 F.3d at 248. In this case, the ALJ mentions plaintiff's medication only to say, "the evidence [does not] confirm that the claimant's pharmacology regimen engenders functionally limiting side effects." (Tr. 19) However that unsupported statement is inadequate considering plaintiff's medications and her testimony regarding their side effects. As of June 8, 2005 plaintiff reported on her Disability Report that she was taking Flexeril (muscle relaxant/analgesic), Klonopin (anti-anxiety), Prozac (anti-depressant), Soma (muscle relaxant/analgesic), and Vicodin (narcotic analgesic) (Tr. 67-68); and by June 11, 2007 she was taking 40 mg of Methadone (narcotic analgesic) four-times daily, 750 mg of Vicodin five-times daily, 350 mg of Soma three-times daily, 600 mg of Ibuprofen three-times daily, 30 mg of Amphetamine Salts (stimulant) twice daily, 3 mg of Lunesta (sleep aid) nightly, as well as Armour Thyroid for low thyroid, and Triamterene for high blood pressure (Tr. 91). Plaintiff had been on Oxycontin (narcotic analgesic) before switching to Methadone. (Tr. 91, 254) Plaintiff testified that Oxycontin makes her sick to her stomach, the Methadone makes her "quite sleepy," and the muscle relaxants also

make her tired.  (Tr. 254)[5]  Also, at the hearing before the ALJ plaintiff's attorney and plaintiff

had this exchange:

> Q:  When you take the medication you said it causes you to be
> sleepy or drowsy.  And how soon after you take them does that
> seem to bring on the drowsiness?
> A:  They usually take about a half hour.  15 minutes.  It just
> depends.
> Q:  And how long does that -- the feeling of drowsiness and
> tiredness lasts (sic)?
> A:  It kind of lingers with me through out the day of taking it.  But
> it's worse, you know, like the first 15 minutes, half hour after I
> take it.  Because then I usually dose (sic) off from it.

(Tr. 260)  Plaintiff's extensive medications and testimony to the functionally limiting side effects

make the ALJ's limited finding inadequate.  See Rogers, 486 F.3d at 248.  The ALJ either failed

to base his determination on substantial evidence, or if he had done so, he failed to articulate his

reasoning as required.  See Brainard, 889 F.3d at 681; Hurst, 753 F.2d at 519.

The ALJ also failed to account for the consistency of plaintiff's complaints.  Consistency

is not determinative, but consistency should be scrutinized when taking the entire case record

into consideration.  Rogers, 486 F.3d at 247-48 ("Consistency between a claimant's symptom

complaints and the other evidence in the record tends to support the credibility of the claimant,

while inconsistency, although not necessarily defeating, should have the opposite effect.").

Plaintiff's symptom complaints are consistent with the ALJ's finding that plaintiff suffers from

fibromyalgia.  (Tr. 15)  Also, the same complaints are found consistently throughout the record:

in plaintiff's function report (exhibit 4E, Tr. 81-88), the psychiatric report of Joseph Morris,

Ph.D (exhibit 8F, Tr. 205-10), and in the hearing before ALJ Thomas Walters (Tr. 243-76).

---

[5]On remand, the agency may want to consider testimony from a medical advisor regarding
plaintiff's medication regime and whether it indicates substance abuse which may result in
denial of benefits.

As discussed above, both the weight given to plaintiff's treating physician by the ALJ and the ALJ's determination of plaintiff's credibility are not supported by substantial evidence. Consequently the hypothetical question posed by the AJL to the VE was incomplete. Thus, the court is presented with the question of whether this matter should be remanded for further proceedings, or whether a judicial award of benefits is warranted. In <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171, 176 (6th Cir. 1994), the Sixth Circuit stated the following:

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. . . . A judicial award of benefits is proper only where the proof of disability is strong and evidence to the contrary is lacking.

Since, in this case, the ALJ determined that plaintiff was not able to perform past relevant work (Tr. 20), a VE's assessment, based on an accurate hypothetical, is necessary to determine if there were jobs in significant numbers in the national economy that plaintiff could have performed. <u>Varley</u>, 820 F.2d at 779; 20 C.F.R. § 404.1560(c). Since the VE was not presented with an accurate hypothetical, the matter needs to be remanded to the agency to establish if plaintiff was able engage in substantial gainful activity. An immediate award of benefits by the district court is not warranted.

**V. Conclusion**

For the reasons stated above, the court finds that the ALJ's decision is not supported by substantial evidence. Further, the court finds, that the record does not support a judicial award of disability benefits. <u>See</u> <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171, 176

(6th Cir. 1994) ("If the court determined that substantial evidence does not support the Secretary's decision, the court can reversed the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequate establishes a plaintiff's entitlement to benefits."). Accordingly, the court recommends that the Commissioner's motion for summary judgment be **DENIED**, that plaintiff's cross-motion for summary judgment be **GRANTED** in part, and that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: August 1, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 1, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan